**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| TODD ANDERSON, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   Case No.  CIV-07-0201-F |
| | ) |
| AMERICA ONLINE, a/k/a | ) |
| AOL, LLC, | ) |
| | ) |
|     Defendant. | ) |

### ORDER

Defendant's motion for summary judgment, filed September 8, 2008, is before the court.  (Doc. no. 49.)   The motion has been fully briefed and is ready for determination.

Standards

Under Rule 56(c), Fed. R. Civ. P., summary judgment shall be granted if the record shows "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  The moving party has the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  All reasonable inferences to be drawn from the undisputed facts are to be determined in a light most favorable to the non-movant. United States v. Agri Services, Inc., 81 F.3d 1002, 1005 (10th Cir. 1996).  Once the moving party has met

its burden, the opposing party must come forward with specific evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

## Background

This action grows out of plaintiff Todd Anderson's employment with defendant, America Online a/k/a AOL, LLC (AOL), and Mr. Todd's termination from that employment on May 23, 2006.[1] The complaint alleges three types of discrimination claims under Title VII, 42 U.S.C. §2000e, *et seq.*: a claim based on plaintiff's race, which is white; a claim based on plaintiff's gender, which is male; and a claim alleging plaintiff was terminated from his position as customer support specialist, in retaliation for protected activity.[2] Defendant moves for summary judgment on all claims. In response, plaintiff states that he has now abandoned his race and gender claims "based upon lack of evidence," leaving plaintiff's retaliatory termination claim as the only remaining claim. (Doc. no. 58, p. 3.)

## Shifting Burdens

The elements of a *prima facie* case of retaliation are: (1) that plaintiff engaged in protected opposition to discrimination; (2) that plaintiff suffered an adverse employment action; and (3) that there is a causal connection between the protected activity and the adverse employment action. O'Neal v. Ferguson Construction Company, 237 F.3d 1248, 1252 (10th Cir. 2001). Once plaintiff makes a *prima facie* showing, defendant must articulate a legitimate, non-discriminatory reason for

---

[1] The complaint alleges plaintiff was terminated on May 28, 2006. The moving papers, however, show it is undisputed that plaintiff was terminated on May 23, 2006.

[2] At times, the moving papers, including at least one affidavit, refer to plaintiff's position as that of customer *service* specialist.

the adverse employment action. *Id.* Plaintiff must then respond by demonstrating defendant's asserted reasons for the adverse action are a pretext for retaliation. *Id.*

## Discussion

Plaintiff asserts that the protected activity which gives rise to his retaliation claim was his good faith assertion to defendant that defendant was violating plaintiff's federally protected rights because plaintiff had been passed over for promotions due to his gender and race. (Complaint, ¶17.) Plaintiff contends this assertion occurred in plaintiff's conversation with Mr. Terry Kealamakia, Director of Call Center Operations, during the first week in April, 2006. In that conversation, plaintiff insinuated that AOL discriminated against white males by promoting minority and female applicants who were less qualified, ahead of white males such as plaintiff who were more qualified. (See, doc. no. 58, pp. 7-9.) Plaintiff contends he may have expressly referred to "minorities" *per se* in that conversation; regardless, plaintiff contends his meaning was transparent (doc. no. 58, p. 8), and Mr. Kealamakia does not contend otherwise. As Mr. Kealamakia states in his affidavit, plaintiff met with him and inquired into the reasons that minorities and females had been promoted rather than plaintiff. (Doc. no. 49, ex. 4, ¶12.) In support of plaintiff's claim that he was discharged as a result of this conversation, plaintiff points out that he was terminated seven weeks after this conversation occurred. (See, *e.g.*, doc. no. 58, p. 18.)

For purposes of the motion, defendant does not argue that plaintiff has not established the first *prima facie* element of his retaliation claim (protected activity) or the second element of his claim (adverse employment action). Defendant challenges only the third element, arguing that plaintiff has not identified evidence of a causal connection between the protected activity and the adverse employment action. In this

regard, defendant argues that the temporal proximity -- seven weeks between the conversation between plaintiff and Mr. Kealamakia, and plaintiff's termination -- is insufficient, standing alone, to show causation, and that there is no other evidence of causation.

Defendant argues that the seven-week period does not show temporal proximity, citing Fye v. Oklahoma Corporation Commission, 516 F.3d 1217 (10th Cir. 2008) and other cases. Fye stated that a two-week period was sufficient temporal proximity to support the *prima facie* element of causation; Fye did not state that a seven-week period, such as existed here, was insufficient. *Id*. at 1228. The Tenth Circuit has held that a one-and-one-half month period between protected activity and adverse action may, by itself, establish causation in some instances. O'Neal, 237 F.3d at 1253, citing Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999). Anderson v. Coors was an Americans with Disabilities Act case in which plaintiff asserted retaliation. In Anderson, the Tenth Circuit stated it need not decide whether a two-month and one-week period was sufficient to show causation standing alone, because, assuming the period was sufficient to support a *prima facie* case, plaintiff could not prove that defendant's proffered reason for terminating her was pretextual. Anderson, 181 F.3d at 1179. On that basis, Anderson affirmed summary judgment for the employer. Similarly, in Medina v. Income Support Division, 413 F.3d 1131, 1137 (10th Cir. 2005), the Tenth Circuit assumed for purposes of argument that a five-week period between protected activity and denial of promotion was sufficient to make out *prima facie* case, and the Court moved on to consider evidence of pretext.

This court adopts the same approach, assuming without deciding that a seven-week period is sufficient, standing alone, to support the causation element of

plaintiff's *prima facie* case, and going on to consider defendant's evidence of non-discriminatory reasons for terminating plaintiff, thereby reaching the issue of pretext.

Defendant has presented undisputed evidence that it terminated plaintiff based on the initial recommendation of plaintiff's immediate supervisor, Rickey Perry; that the decision to adopt Mr. Perry's recommendation was made by Carolyn Lindsay, Sales Manager, and by David Fuzzell, Human Resources Manager; and that the termination decision was finally approved by Terry Kealamakia, Director of Call Center Operations.

Mr. Perry states that he decided to recommend plaintiff's termination based on plaintiff's insubordination and misconduct, after plaintiff's behavior on the call center floor on May 23, 2006, which defendant contends involved negative comments made by plaintiff within earshot of the entire team. (For this and all of the below-described evidence regarding Mr. Perry's version of the incident, see doc. no. 49, ex. 19, ¶¶ 14-17, Perry affidavit.) Mr. Perry's affidavit characterizes plaintiff's comments on that occasion as a "tirade." Mr. Perry states that plaintiff's comments included calling another employee a "sex offender," and that plaintiff criticized defendant's decision to promote an African American male who plaintiff claimed was "just now going to school." Mr. Perry also states that plaintiff exclaimed he was not going to have anything to do with certain employees because they had been promoted.

Mr. Perry's affidavit further states that at the time of the May 23 incident, Mr. Perry approached plaintiff and asked plaintiff to immediately cease making these comments and to leave the call center floor, but that plaintiff refused, despite repeated requests, and continued his tirade. Mr. Perry characterizes this conduct as insubordination. Mr. Perry states that plaintiff continued to exclaim that certain employees were not qualified for their jobs, then plaintiff loudly questioned the sexual

orientation of another employee. Mr. Perry states that plaintiff exclaimed that this other employee had a personal vendetta against plaintiff. Mr. Perry states that plaintiff said plaintiff was better qualified than anyone else in the call center.

Mr. Perry states that after plaintiff's tirade in the middle of the call center floor, Mr. Perry made the decision to recommend that plaintiff be discharged. Mr. Perry states that other reasons for his decision included plaintiff's failure to be an effective resource for plaintiff's team and concerns with plaintiff's lack of leadership.

Defendant has also presented evidence that Carolyn Lindsey and David Fuzzell concurred in the decision to recommend discharge based on their individual conclusions that plaintiff was not effective in his role as a customer service specialist; that plaintiff's team did not perceive him as an effective resource; that plaintiff reacted negatively to decisions he did not agree with; and that plaintiff would share his negativity with co-workers on the call center floor, including criticism and disparaging remarks about decisions concerning promotions. (See, doc. no. 49, ex. 24, ¶ 6, Fuzzell affidavit; doc. no. 49, ex. 3, ¶¶ 18-19, Lindsey affidavit.) Mr. Kealamakia's affidavit states that his final approval for the discharge was given after termination was recommended to him on or about May 23, 2006. (Doc. no. 49, ex. 4, ¶¶ 13-14.)

The above constitutes evidence of legitimate, non-discriminatory reasons for plaintiff's termination. Accordingly, to avoid summary judgment, plaintiff must identify evidence that defendant's reasons for plaintiff's termination are merely pretext for a retaliatory motive. A plaintiff may show[3] pretext by demonstrating such

---

[3] Of course, plaintiff need not actually "show" or "prove" or "establish" anything to defeat defendants' motions. Plaintiff must merely demonstrate the existence of a genuine issue of material fact. Although this order sometimes uses the quoted terms because they are used in the case law, (continued...)

weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact-finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons. Anderson v. Coors, 181 F.3d at 1179. Mere conjecture that the employer's explanation is pretext is insufficient to defeat summary judgment. *Id.*

To show pretext, plaintiff contends that certain forms referred to as "situational feedback logs" (SFLs) were to be presented to the offending employees for signature, but that the SFLs in his personnel file were falsified, exaggerated or contrived, because they were, among other things, purportedly created after he was terminated. Plaintiff's evidence that the SFLs were created after his termination is based on the hearsay statement of an unidentified employee of the Oklahoma Employment Security Commission (OESC) who plaintiff contends advised him that his personnel file had been turned over to the OESC and that the OESC had then made the whole file available for plaintiff's review as a part of the unemployment claim process. This statement by the OESC employee, combined with plaintiff's testimony that the SFLs were not in the file he reviewed from the OESC (doc. no. 64, ex. 28, pp. 312-13), combined with plaintiff's testimony suggesting the forms also had not been in his personnel file when plaintiff reviewed it one other time (doc. no. 64, ex. 28, p. 313), and combined with the fact that the SFLs were not signed by plaintiff or otherwise communicated to plaintiff, caused plaintiff to conclude that the SFLs were falsely generated after he was terminated.

---

[3](...continued)
the court has consistently judged plaintiff's claims by the lesser standard which is appropriate at this stage. Goodwin v. General Motors Corporation, 275 F.3d 1005, 1011 at n.7 (10th Cir. 2002)(abrogated on other grounds.).

Plaintiff further supports his contention the SFLs were falsely generated with his testimony that he had a first-hand familiarity with the defendant's policy requiring the SFL forms to be signed by the offending employee and filed in the employee's personnel file.  Plaintiff testified at his deposition that when he was a "CSS [customer support specialist]," "We would include stuff in people's personnel file.  Situational Feedbacks and things like that."  Plaintiff conceded, however, that he did not have personal knowledge of exactly what the assistant who filed the SFL logs did, and plaintiff conceded that he just knew the assistant filed the SFLs "away."  Aside from this testimony, plaintiff has no evidence that the SFLs were required to be communicated to him.  Furthermore, plaintiff concedes there were no signature lines on the SFL forms for employees receiving the SFL to sign.  Plaintiff also admits that at least in some respects, the SFLs he contends were written after his termination are accurate.  (For all of above, see doc. no. 64, ex. 28, pp. 312-15, 338-51.)

The court finds that plaintiff has no evidence to support his belief that the SFL's were falsified or contrived.  His belief is merely conjectural.

Plaintiff also relies, as evidence of pretext, on his testimony that after plaintiff's conversation with Mr. Kealamakia, Mr. Perry tried to set plaintiff up to be fired.  Plaintiff reached this conclusion because he felt Mr. Perry encouraged plaintiff to cheat on his time sheets and to take other fraudulent action plaintiff refers to as "gaming," in violation of defendant's policies.  (*See*, doc. no. 58, ¶ 14, and ex. 1, p. 240.)  Plaintiff has identified no evidence in support of his belief that he was being set up for failure by Mr. Perry.  Again, plaintiff's belief is merely conjectural.

The court also notes the undisputed fact that employee surveys regarding plaintiff's performance included criticisms from employees with whom plaintiff worked.  (See, doc. no. 64, ex. 28, p. 305;  and doc. no. 49, p. 5, undisputed fact no.

10 and response to this undisputed fact, at doc. no. 58, p. 15.)  Plaintiff does not dispute that in 2005 he was advised that he needed to work on building relationships with the consultants on his team.  (Doc. no. 49, p. 6, undisputed fact no. 11 and response.) Plaintiff testified at his deposition that at least one member of management told others that plaintiff was "arrogant and cocky," and "conceited."  (Doc. no. 64, proposed undisputed fact no. 44, ex. 28, p. 127.)

Although plaintiff disputes that he had a "tirade" on the last day of his employment and denies that he made most of the negative statements Mr. Perry contends plaintiff made on that occasion, when plaintiff was asked at his deposition whether he denied "being on the call center floor and claiming that [a certain employee] and others were not qualified for the jobs they held," plaintiff answered "No."  (Doc. no. 49, ex. 1, p. 366.)  Thus, plaintiff concedes that on the call center floor, on the day plaintiff was terminated, plaintiff made at least one negative comment about the qualifications of co-employees.

Mr. Kealamakia, who was obviously aware of plaintiff's conversation with him, made the final decision to discharge plaintiff.  However, undisputed evidence shows that three other members of management first recommended that plaintiff be discharged.  Plaintiff speculates that these other three individuals knew about plaintiff's complaints to Mr. Kealamakia regarding the company's failure to promote white male employees, *i.e.* knew about the protected activity.  Plaintiff appears to base this speculation on what these individuals could have known, how they could have known it, or vague statements about issues discussed in meetings.  Plaintiff, however, has identified no evidence to support his belief that any of these three individuals actually knew about plaintiff's complaints to Mr. Kealamakia.  The lack of evidence in this regard is underscored by these individuals' affidavits.  Each of them states that

at the time of plaintiff's termination they were not aware that plaintiff had told *anyone* that plaintiff believed he was not being promoted due to his race and gender. (Doc. no. 49, ex. 3, ¶ 14; ex. 19, ¶ 18; ex. 24, ¶ 7; emphasis added.)

Moreover, in these circumstances, the seven-week period between the protected activity and the termination also does not constitute evidence of pretext. *Cf.*, Medina, 413 F.3d at 1138 (five-week period between protected activity and denial of promotion, without more, was not evidence of pretext).

The court finds and concludes there is no evidence that defendant's stated, non-discriminatory reasons for terminating plaintiff were a pretext for retaliation against plaintiff for participating in protected activity. As a result, defendant is entitled to summary judgment on plaintiff's retaliatory termination claim.

## Conclusion

After careful consideration, defendant's motion for summary judgment is **GRANTED** to the following extent. Summary judgment is **GRANTED** in defendant's favor on plaintiff's retaliatory termination claim. The other claims alleged in this action are **DISMISSED** with prejudice based on plaintiff's abandonment of those claims for lack of evidence only after those claims were challenged by a supported motion for summary judgment.

Dated this 21st day of January, 2009.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

07-0201p017(pub).wpd